UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC BOATMAN and CAROL JARVIS, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 18 C 4237** |
| v. | ) | |
| | ) | **Judge Steven C. Seeger** |
| ELIJAH MUHAMMAD, RAMON McCALPINE, | ) | |
| OSHAY RIFE, HARVEY POLICE DETECTIVE | ) | |
| A. MARINEZ (STAR NO. 1013), HARVEY | ) | |
| POLICE DETECTIVE YORK (STAR NO. 1032), | ) | |
| ROBERT WRIGHT, GREGORY THOMAS, | ) | |
| HARVEY POLICE OFFICER WALLACE | ) | |
| (STAR NO. 922), UNKNOWN OFFICERS OF | ) | |
| THE HARVEY POLICE DEPARTMENT, and | ) | |
| CITY OF HARVEY, ILLINOIS, | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**PLAINTIFFS' PETITION AND MEMORANDUM IN SUPPORT OF PETITION FOR
ATTORNEYS' FEES**</u>

Plaintiffs, ERIC BOATMAN and CAROL JARVIS, by and through their attorneys,

Irene K. Dymkar and Shamoyita M. DasGupta, hereby petition this Court for an order granting

them attorneys' fees in the amount of $466,832.50, through October 10, 2022, only, against

defendants ELIJAH MUHAMMAD, RAMON McCALPINE, OSHAY RIFE, A. MARINEZ,

JEFFREY YORK, JR., ROBERT WRIGHT, GREGORY THOMAS, ANDREW WALLACE,

and CITY OF HARVEY, ILLINOIS. They submit the following memorandum in support of said

petition.

**I.  Background**

This fee petition follows more than five years of legal work and intense litigation. The

constitutional violations occurred on June 18, 2016, when defendant City of Harvey police

officers entered and raided the Boatman/Jarvis home without a warrant, used excessive force against plaintiff Eric Boatman, falsely arrested and prosecuted Mr. Boatman, and cruelly shot the family dog in front of him. See Court's Judgment and Order, which includes findings of facts and conclusions of law. Doc. 200. A default order was issued against defendants. Thereafter, a damages trial was held before this Court on July 13, 2021, July 14, 2021, and August 16, 2021. This Court awarded $337,089.00 in compensatory damages to plaintiff, Eric Boatman, and $34,070.00 in compensatory damages to plaintiff, Carol Jarvis, in a decision and final judgment on July 6, 2022. Docs. 199, 200. The judgment was corrected on July 26, 2022, to specifically name all defendants against whom the July 6, 2022, judgment was directed, that is, Elijah Muhammad, Ramon McAlpine, Oshay Rife, A. Marinez, Jeffrey York, Jr., Robert Wright, Gregory Thomas, Andrew Wallace, and City of Harvey, Illinois. Doc. 205.

Defendants did not file post-trial motions. Defendants filed an untimely a notice of appeal on August 12, 2022. Doc. 209. Plaintiffs have moved to dismiss the appeal for lack of jurisdiction. Doc. 221.

## II.  Attorney's fees computation

As the prevailing party, plaintiffs are entitled to attorneys' fees. See 42 U.S.C. § 1988. Plaintiffs request an order granting attorneys' fees in the amount of $466,832.50, through October 10, 2022, only, computed as follows:

| Attorney | Rate | Number of Hours | Lodestar |
|---|---|---|---|
| Irene K. Dymkar | $525/hour | 527.0 | $276,675.00 |
| Shamoyita M. DasGupta | $325/hour | 585.1 | $190,157.50 |
| | | **TOTAL** | **$466,832.50** |

Plaintiffs filed a Bill of Costs for $2,426.88. Doc. 201. Defendants did not object to the Plaintiffs' Bill of Costs. Judgment was entered on costs on July 26, 2022. Doc. 205.

The parties' joint statement is attached as Exhibit A. On August 2, 2022, plaintiffs' counsel sent defense counsel a draft joint statement. On September 8, 2022, defense counsel sent back the draft with her additions. On October 7, 2022, plaintiffs' counsel sent defense counsel a revised draft and on October 10, 2022, filled in the lodestar with additional hours through October 10, 2022.

In the joint statement, defense counsel gives a total figure for attorneys' fees ($137,599.90), but refuses to state the basis for that calculation. Counsel has never disclosed which billing items defendants dispute, why they are disputed, or why the lodestar has been reduced. Plaintiffs' counsel has asked defense counsel to give detail, as they are required to do under Local Rule 54.3, but defense counsel has failed to do so. Plaintiffs submit that noncompliance with Local Rule 54.3 should result in a waiver or forfeiture by defendants of the right to make objections to plaintiffs' billing statements and lodestar.

### III.  Legal standard for adjudicating plaintiffs' fee petitions: the lodestar is the presumption.

The law in this Circuit is very clear that when a party prevails in a civil rights action, as plaintiffs did here, the prevailing attorneys are entitled to recover a reasonable fee for the services they provided. 42 U.S.C. § 1988. A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *See, e.g. Nichols v. Illinois Department of Transportation*, 4 F.4th 437, 443 (7th Cir. 2021), citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

3

Under familiar lodestar principles, the amount of the fee award is calculated by multiplying reasonable hours by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Walton v. First Merchant's Bank*, 820 Fed.Appx. 450, 456 (7th Cir. 2020). There is a strong presumption that the lodestar is the appropriate measure of the fee award. *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018); *Blum v. Stenson*, 465 U.S. 886, 897 (1984). As the Supreme Court has clarified, this "strong presumption that the lodestar figure. . .represents a reasonable fee is wholly consistent with the rationale behind [§1988]." *Id*. at 789; *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). Fee awards are designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Simpson v. Sheahan*, 104 F.3d 998, 1002 (7th Cir. 1997), citing *Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

Plaintiffs ask the Court to award the lodestar of $466,832.50, through October 10, 2022, as computed herein. In this case, plaintiffs' lodestar is justified, and should be granted for the reasons discussed below.

**III.  The hours expended in this case are reasonable and should be approved**.

Attached are the time and work records for Irene K. Dymkar, totaling 527.0 hours (Exhibit B) and for attorney Shamoyita M. DasGupta, totaling 585.1 hours (Exhibit C). The time and work records submitted with this petition are detailed and they accurately represent the work performed in this case. For the following reasons, the hours expended in this case by plaintiffs' attorneys are reasonable and should be approved by this Court.

4

**Plaintiffs achieved a result at trial that was almost ten times the amount defendants were willing to offer**.

"[T]he most critical factor" in determining a fee award is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "A plaintiff who achieves excellent results should receive the entire lodestar." *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014).

Defendants were and are singularly uninterested in settling this case and avoiding the continued accumulation of attorneys' fees. The most defendants ever offered plaintiffs was $40,000.00, to be split between the two plaintiffs. This amount included attorneys' fees and costs.

Plaintiffs' attorney, Irene K. Dymkar, first began discussing the possibility of settlement with then-counsel for defendants, Ellen K. Emery, in August of 2019, based on the amounts set forth in Plaintiffs' Motion for Default Judgment - Determination of Damages, that is, $209,589.00 in compensatory damages and $40,000.00 in punitive damages for plaintiff Eric Boatman, and $73,430.00 in compensatory damages and $20,000.00 in punitive damages for plaintiff Carol Jarvis. See Doc. 67. Even though liability against defendants was already established and plaintiffs were with certainty "the prevailing parties," defendants made no offer whatsoever to settle.

Attorney Dymkar again raised the possibility of settlement in April of 2020 and referenced the amounts set forth in plaintiffs' Motion for Default Judgment. In August of 2020, defendants inquired as to amount of plaintiffs' counsel's attorneys fees. On September 2, 2020, plaintiffs' counsel answered defendants' inquiry, indicating that their fees and costs were

estimated to be between $200,000.00 and $300,000.00, at that time, but were increasing by the day. Again, defendants made no offer.

There was no further discussion of settlement until July 9, 2022, shortly before the damages trial in this case. At that time, defendants offered only $40,000 total (split evenly between plaintiffs) to settle the case, inclusive of attorneys' fees and costs. At that point, plaintiffs had been litigating the case for three years. Plaintiffs rejected the offer.

Following the damages trial, this Court awarded plaintiff Eric Boatman $337,089.00 in compensatory damages and plaintiff Carol Jarvis $34,070.00 in compensatory damages, for a total of $371,159.00, nearly *ten times* the amount of defendants' only offer, which was *included* attorneys' fees and costs. Of significance, the total award was even greater than the amount plaintiffs had suggested in their Motion for Default Judgment. See Doc. 67.

Given the facts and history of this case, the judgment amount was a success. As the Seventh Circuit stated in *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014): "A plaintiff who achieves excellent results should receive the entire lodestar."

**This case was intensely and needlessly litigated by defendants.**

This case has been intensely and needlessly litigated. It continues to be intensely and needlessly litigated, in that defendants refuse to negotiate attorneys' fees or cooperate with the filing of this fee petition. In addition, defendants have filed an untimely notice of appeal, an appeal for which the Court has clearly ruled defendants "have not shown a likelihood of success on the merits." See Doc. 214 at 4. The appellate jurisdiction issue is before this Court, and should this Court rule that the Seventh Circuit has jurisdiction, it will be litigated again both as a motion to dismiss the appeal before the Seventh Circuit, and if needed, as an issue in the opening brief or in a responding brief in a future appeal.

6

The Court's decision to deny a stay on appeal describes the prolonged litigation caused by defendants. See Doc. 214. Defendants made *four* unsuccessful attempts to vacate the default order entered against them. Plaintiffs first moved for default against defendants on August 21, 2018. See Doc. 19. After none of the defendants appeared at the motion hearing on August 29, 2018, this Court granted plaintiffs' motion and entered an order of default against all of the defendants, and directed plaintiffs to file a motion for default judgment on October 19, 2018. On October 12, 2018, however, defendants' original counsel, Stepfon Smith, appeared and filed defendants' "Motion to Vacate Defaults and for Leave to File Responsive Pleadings to Plaintiffs' Complaint at Law." See Doc. 26. This motion did not contain any substantive explanation of the relief defendants were requesting, apart from what was set forth in the title of the motion, and defendants' counsel Smith failed to appear in court to present defendants' motion. This Court summarily denied defendants' motion, because "the motion [did] not provide any reason for Defendants' failure to timely answer or otherwise plead." See Doc. 31.

Defendants then filed the oddly entitled "Supplement to the Harvey Defendants' Motion to Vacate Default and for Leave to File Responsive Pleadings to Plaintiffs' Complaint at Law." See Doc. 34. The document was apparently categorized as a motion to supplement, and filed in connection with the defendants' previous motion, which had already been denied. This Court summarily denied defendants' "Supplement," and told defense counsel directly and clearly in court that it was giving defendants one final opportunity to file a proper motion to vacate the entry of default by October 30, 2018, unequivocally ordering defense counsel to include affidavits from each and every defendant, as well as from the attorney for the City of Harvey. See Doc. 37.

7

Despite the Court's generous ruling, defendants filed "Harvey Defendants' Joint Motion to Quash Service and Vacate Defaults Against All Defaulted Defendants," on October 30, 2018, but failed to include any of the required affidavits. See Doc. 38. Defendants' motion was fully briefed, and on March 6, 2019, this Court denied the motion. See Doc. 49.

Then, without leave or explanation, defendants filed an answer to plaintiffs' complaint. See Doc. 50. Plaintiffs moved to strike the answer, and the Court granted plaintiffs' motion. See Docs. 51 and 54. Shortly thereafter, defendants' counsel Smith and Alexis Maimonis withdrew their appearances from this case and were replaced by attorneys Ellen Emery and Kathleen Kunkle, of Ancel Glink, LLC. Attorney Emery has since withdrawn her appearance.

Plaintiffs then filed their Motion for Default Judgment - Determination of Damages on June 28, 2019. See Doc. 67. Defendants then filed their *fourth* motion to vacate the default judgment, on August 19, 2019, nearly a year after the Court first entered the default order against defendants. See Doc. 75. This Court denied defendants' fourth motion on December 19, 2019. See Doc. 81.

The defendants were then permitted, over plaintiffs' objection, to conduct "discovery limited to the issue of damages." Doc. 91. After defendants sent numerous overbroad subpoenas to facilities where plaintiff Boatman had previously been incarcerated, the parties then extensively litigated the issue of the types of records that defendants would be permitted to request from these facilities, as well as the exact language that would be appropriate for the protective order that was ultimately entered in this case. This issue was not resolved until this Court heard oral argument from the parties on November 10, 2020. Doc. 128. It was only after that hearing that depositions began.

8

Defendants took the depositions of plaintiff Eric Boatman and plaintiff Carol Jarvis. Because liability was already established against all defendants by the default order, and because plaintiffs decided to waive punitive damages, thus eliminating state-of-mind issues, plaintiffs saw no need to take the depositions of defendant officers. This decision streamlined and simplified the case.

The damages hearing was not in front of a jury. Plaintiffs had requested a jury, but the Court ruled that a jury trial was not required. Several motions *in limine* were filed, and a modified pre-trial order was prepared. At the damages hearing, plaintiffs called three medical experts (Dr. William Crevier, Dr. Andrea Ward, and Dr. Joseph Mason) and two eye-witnesses to the stand, in addition to the two plaintiffs. Plaintiffs also provided the Court with information about comparable cases, to aid the Court in computing damages.

The Court remarked several times that this was a unique case. Throughout the litigation, the Court asked for briefing on various issues pertaining to the default and the scope of discovery, including the scope of subpoenas for medical and mental health records and prison records, and the scope of the damages hearing. At any point, defendants could have agreed to engage in settlement negotiations, knowing that liability was already established and attorneys' fees were a near certainty. Regardless, defendants continued to vigorously fight this case.

**Defendants have failed to make any objections to any specific line item in the 60 pages of billing produced, and thus waive or forfeit those objections.**

Plaintiffs' counsel sent their billing statements to defense counsel on August 2, 2022. While defendants have argued in general that they believe time allotments are excessive, they have failed to disclose in the past two months any specific objection to any specific line item, as

required by Local Rule 54.3(d)(5) ("the parties shall specifically identify all hours,[and] billing rates that will or will not be objected to").

Defendants should not be allowed to assert objections to any line items in plaintiffs' billing at this point. Local Rule 54.3 requires the parties to sort out ahead of time what is disputed and what is not, and to discuss those disputes, prior to the filing of the fee petition. Plaintiffs brought this to the Court's attention in a motion asking the Court to allow them to proceed with the filing of the fee petition, describing the lack of cooperation on the part of defendants in following Local Rule 54.3. See Doc. 222. Plaintiffs said:

> [Defendants] have not disclosed any of their objections to plaintiffs' billing statements, but they have also not agreed to pay any of plaintiffs' attorney fees. In the eight weeks since the damages judgment was entered, defendants have refused to talk about payment [of the damages judgment].

Id. at 4.

While defendants give a total figure ($137,599.50) for attorneys' fees, they have never disclosed which billing items they object to and how they made their odd calculation, despite plaintiffs' counsel asking them to be specific, as required by Local Rule 54.3. Defendants should not be allowed to make objections now, in response to this petition, when they have left plaintiffs in the dark as to what their legal authority is for reducing plaintiff's lodestar, and which line items they object to.

### IV.  Plaintiffs' requested attorney rates are reasonable.

Irene K. Dymkar, a trial attorney for more than 45 years, seeks the rate of $525/hour. Shamoyita M. DasGupta, a trial attorney for nearly seven years, seeks the rate of $325/hour. For the reasons set forth below, the proposed rates are reasonable and supported, and should be approved.

**Defendants have waived any objections to the requested attorney rates.**

In their joint statement, defendants failed to list the requested attorney rates as a disputed issue. See Exhibit A. Local Rule 54.3(e)(3) states that the parties "[shall prepare a joint statement listing] a brief description *of each specific dispute remaining* between the parties as to the fees (emphasis added)." Defense counsel did not list the attorney rates as a remaining dispute, although from the chart they prepared, it appears that they disagree with Ms. Dymkar's rate at $525/hour, for undisclosed reasons, while they agree with Ms. DasGupta's rate at $325/hour.

Defendants have waived any objections to plaintiffs' requested attorney rates.

**Reasonable hourly rates assure that experienced civil rights attorneys will take cases.**

The purpose and intent of § 1988 is to attract talented lawyers to civil rights endeavors. By promising to award the prevailing hourly rates, that is, the market rates, lawyers who could otherwise command high billing rates in commercial pursuits are encouraged to represents civil rights clients such as plaintiffs. *See Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) ("In order for such a policy [vindicating civil rights through private action] to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement."), citing S. Rep. N. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913. ("It is intended that the amount of fees awarded under [§1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases. . .").

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Fields v. City of Chicago*, 2018 WL 253716, *2 (N.D. Ill., Jan. 1, 2018), citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). "The focus is 'the prevailing

market rate for lawyers engaged in the type of litigation in which the fee is being sought.'"
*Fields*, 2018 WL 253716 at *2, citing *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996).

**It is reasonable to increase Attorney Irene K. Dymkar's rate to $525/hour.**

Attorney Irene K. Dymkar's declaration in support of this petition and the hourly rate of
$525 is attached hereto as Exhibit D. Ms. Dymkar has been a trial attorney for over 45 years,
since 1977, with a litigation practice formerly in New York and now in Illinois. Ms. Dymkar's
rate was last set at $475/hour by Magistrate Judge M. David Weisman, in the case of *Wilbon, et*
*al. v. Plovanich, et al.*, 12 C 1132, Northern District of Illinois, (Doc. 576 at p. 3) on February 1,
2019. It was kept at that rate by Judge Sara L. Ellis, in the case of *Teague, et al. v. Miehle, et al.*,
14 C 6950, Northern District of Illinois (Doc. 239 at p. 7) on March 19, 2019.

Ms. Dymkar seeks an increase to $525/hour. It is well established that hourly fees
increase over time as a result of both inflation and the increasing skill and reputation of the
billing attorney. *See Williamson v. Ortiz*, 2019 WL 3555370, *2 (N.D. Ill. July 31, 2019). It must
be noted that defendants apparently are not disputing increasing the rate to at least $495/hour.
See Exhibit A.

Additional detail about Ms. Dymkar's legal career is contained in her declaration attached
as Exhibit D supporting Ms. Dymkar's request for $525/hour. In addition, affidavits from well-
established and well-respected Chicago civil rights attorneys who have observed and worked
with Ms. Dymkar and therefore know the quality of her work, are attached as Exhibits E
(affidavit of Attorney Jeffrey J. Neslund), Exhibit F (affidavit of Basileios J. Foutris), Exhibt G
(affidavit of Janine L. H. Hoft of People's Law Office), and Exhibit H (affidavit of Melinda L.
Power). Of note, Mr. Neslund, who has been practicing for 29 years, has an hourly rate of $550,

awarded in 2019 in the case of *Williamson v. Ortiz* 14 C 6397, Northern District of Illinois, Doc. 306. In 2016, Ms. Dymkar and Mr. Neslund worked together to obtain a $3 million verdict in 2016 in a state court shooting case, *Montgomery as Special Administrator, et al., v Valell Corp., et al.,* 13 L 11559.

Ms. Dymkar's request for an increase in her rate to $525/hour is reasonable given her many years of experience, and comparable rates set for attorneys with similar levels of experience. In *Fields v. City of Chicago*, 2018 WL 253716, *4 (N.D. Ill., Jan. 1, 2018), an attorney who had been practicing at the time for approximately 46 years (Kenneth N. Flaxman) was awarded the rate of $600/hour, and another who had been practicing at the time for 35 years (H. Candace Gorman), was awarded a rate of $500/hour. In *First Midwest Bank, as Guardian of Michael D. LaPorta, v. City of Chicago*, 14 C 9665 (Doc. 561), attorney Antonio Romanucci, who had been practicing for 33 years, was awarded the rate of $550/hour by the Court. In 2011, the rate for attorney Thomas Morrissey, then practicing 32 years, was set at $535/hour in a civil rights case sanctions petition. *Foltin v. Ugarte*, 09 C 5237, Northern District of Illinois, Doc. 144, 165. Attorney Flint Taylor's adjudicated hourly rate was set at $525/hour when he had been practicing law for 36 years. *Delgado v. Mak*, 2009 WL 211862 (N.D. Ill. Jan. 29, 2009). In an employment case in 2009, 13 years ago, the court approved $500/hour for attorney John DeRose, who had been practicing for 41 years. *Flanagan v. Cook County*, 2009 WL 3156716, *9 (N.D.Ill. Sept. 28, 2009).

The Seventh Circuit has held that this Court may also consider rates from other jurisdictions, given the specialized nature of the litigation in this case. *See Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (concluding that where "the

subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country); *see also, E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013) ("In cases such as the present one, in which there is no lawful billing rate, the prevailing market rate should be determined with reference to the next best evidence, which includes, among other things, evidence of fee awards the attorney has received in similar cases.") (internal quotations omitted). In jurisdictions elsewhere in the United States, civil rights attorneys with expertise similar to plaintiffs' attorneys have been awarded rates higher than those requested in this petition. In *Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273, 277, 79 (E.D. Va. 2020), a case involving First Amendment litigation, the Eastern District of Virginia awarded the partner on the case the rate of $730/hour; the senior associate on the case, $590/hour; the junior associate on the case $545/hour; and the paralegal $290/hour; *see also Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (Section 1983 excessive force case approving hourly rates of $500 for six years' experience).

It bears mention that attorneys with expertise and experience in fields comparable to plaintiffs' attorneys' expertise and experience in civil rights routinely seek and are awarded rates higher than those requested. *See, e.g., In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 2016 WL 4765679 (N.D. Ill. Sept. 13, 2016) (in class action, $800/hour awarded to attorney with 23 years' experience, $595-$630/hour to attorneys with 17 years' experience, $510/hour to an attorney with 12 years' experience, and $425/hour to an attorney with 10 years' experience); *Carr v. Tillery*, 2010 WL 1416007, *7 (S.D.Ill. March 31,

2010) ($645/hour for attorney with 22 years of experience); *Entertainment Software Ass'n v. Blagojevich*, 05 C 4265, 2006 WL 3694851 *2 - 3 (N.D. Ill. Aug. 9, 2006) ($585/hour for attorney with 27 years of practice, $425/hour for attorney with 10 years of practice; *Neuros Co., Ltd. v. KTurbo Inc*., WL 547599 (N.D.Ill. Feb. 9, 2010) ($560/hour for attorney with 12 years of experience, $450/hour for attorney with six years of experience); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558/hour to class action attorney with 10 years' experience); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) ($500-$750/hour to multiple lawyers in ERISA case); *Harris N.A. v. Acadia Investments*, 2012 WL 1681985, at *2-3 (N.D. Ill., May 14, 2012) ($560-$650/hour in a case involving default on a note); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009 ($500+/hour in copyright action).[1]

Given her experience, the rates granted by courts to other plaintiff's civil rights attorneys of similar experience, and the attorney affidavits, Ms. Dymkar asks the Court to increase her rate of compensation to $525/hour.

**It is reasonable to increase Attorney Shamoyita M. DasGupta's rate to $325/hour**

Attorney Shamoyita M. DasGupta's declaration in support of this petition and the hourly rate of $325 is attached hereto as Exhibit I. Affidavits from attorneys Louis J. Meyer and

---

[1] *See also Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (employment law case approving hourly rate of $850 for senior attorney); *Chambers v. Whirlpool Corp.*, 2016 WL 5922456, at *14 (C.D. Cal. Oct. 11, 2016) (consumer class action approving hourly rates of $750 for 20+ years' experience, $625 for 14 years, $600 for 13 years, and $485 for 10 years); *Merino v. Beverage Plus America Corp.*, 2012 WL 4468182, at *2-3 (S.D.N.Y. 2012) (wage and hour case; approving hourly rates of $700 for 35 years' experience, $300 to $450 for 11 years, $275 to $300 for 5 years' experience); *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013) (First Amendment trademark litigation approving hourly rate of $700 for public interest attorney with 20+ years' experience).

James L. Bowers, well-established and well-respected Chicago civil rights attorneys who have observed and worked with Ms. DasGupta and therefore know the quality of her work, are attached as Exhibits J and K, respectively.

Ms. DasGupta has been a trial attorney for nearly seven years. Her rate of $230/hour was first set by Judge Rebecca R. Pallmeyer in the case of *Nelson v. Lis*, 09 C 883, Northern District of Illinois, (Doc. 244 at p. 8) on March 28, 2017. It was kept at that rate by Judge Manish S. Shah in the case of *Wilson v. Baptiste, et al.*, 13 C 7845, Northern District of Illinois, (Doc. 286 at p. 4) on July 13, 2017; by Magistrate Judge M. David Weisman in the case of *Wilbon, et al. v. Plovanich, et al.*, 12 C 1132, Northern District of Illinois (Doc. 576 at p. 3) on February 1, 2019; by Judge Sara L. Ellis in the case of *Teague, et al. v. Miehle, et al.*, 14 C 6950, Northern District of Illinois (Doc. 239 at p. 8) on March 19, 2019; and again by Judge Manish S. Shah in the case of *Bonner v. O'Toole,* 12 C 981, Northern District of Illinois (Doc. 530 at p. 4) on September 11, 2019.

This rate was set when Ms. DasGupta had only a little more than *one year of experience* as an attorney. Since the setting of her rate, she has had nearly six more years of experience. She has worked on 32 federal civil rights cases filed in the Northern District of Illinois and two state court cases, one of which involved a police shooting death. She is now a member of the trial bar. She has served as one of the trial attorneys in seven trials cited in her declaration, and examined witnesses (both direct examinations and cross-examinations) in five of those cases. Two of those trials were for a police shooting death case - the first trial lasted one month and resulted in a deadlocked jury, while the second trial lasted one month as well, and resulted in a $5.1 million verdict for the plaintiff's estate.

16

Ms. DasGupta's request for an increase in her rate to $325/hour is reasonable given the additional experience she has gained since her rate was last set and comparable rates set for attorneys with similar levels of experience.

In *Richardson v. City of Chicago*, an attorney with nine years of experience that focused heavily on criminal defense and civil rights litigation was awarded a rate of $400/hour, a rate which was adopted by the District Judge in that case and ultimately affirmed by the Seventh Circuit Court of Appeals. *Richardson v. City of Chicago*, 2012 WL 6185867, *12 (N.D. Ill., Nov. 20, 2012); *Richardson v. City of Chicago*, 2013 WL 2451107, *4 fn. 1 (N.D. Ill., June 5, 2013); *Richardson v. City of Chicago*, 740 F.3d 1099, 1104 (7th Cir. 2014). In *Montanez v. Simon*, 755 F.3d 547, 551 (7th Cir. 2014), the court affirmed an award of $385/hour for an attorney with nine years of experience. In *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 985 (N.D. Ill. 2012), the court awarded an attorney with eight years of experience at the time of filing the fee petition an hourly rate of $350. In *Adamik v. Motyka*, 2018 WL 3574751, *4-5 (N.D. Ill., July 25, 2018), the court awarded an attorney with nine years of experience at the time of filing the fee petition a rate of $350/hour, and an attorney who had five years of experience at the time of filing the fee petition a rate of $310/hour. In *Fields v. City of Chicago*, 2018 WL 253716 at *3, two attorneys with approximately eight years of trial experience were awarded a rate of $325/hour. In *Williamson v. Ortiz*, 2019 WL 3555370, *2 (N.D. Ill., July 31, 2019), the court awarded an attorney with approximately seven years of experience an hourly rate of $310. In 2011, in *Carrel v. Sisk*, 09 C 844, the court awarded attorney Shehnaz I. Mansuri, who had been practicing 13 years, $420/hour. *Carrel v. Sisk*, 09 C 844, Doc. 113, Order, Doc. 111, Fee Petition, with Atty.

17

Affid. Of note, the *Carrel* jury had awarded plaintiff damages of only $600 for an illegal entry and $2,000 for excessive force. Doc. 91.

As argued above, the Seventh Circuit has held that this Court may consider rates from other jurisdictions, given the specialized nature of the litigation in this case. *See Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Petitioner thus asks the Court to consider: *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (Section 1983 excessive force case approving hourly rates of $500 for six years' experience); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving hourly rates of $358 for six years' experience, $325 for five years' experience); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Ca. 2014) (Section 1983 false arrest and excessive force case, approving hourly rates of $400 for five years' experience); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (Section 1983 First Amendment case approving hourly rates of $375 for seven years' experience); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (Section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years' experience).

Ms. DasGupta's experience over the past seven years, the market rate for attorneys of similar skill level, the rates granted by courts to other plaintiff's civil rights attorneys of similar experience, and the attorney affidavits submitted, all warrant an increase in Ms. DasGupta's rate to $325/hour.

**The *Laffey* Matrix further supports plaintiffs' counsel's requested hourly rates.**

The United States Attorney's Office for the District of Columbia has created what has become known as the *Laffey* Matrix, to provide an official guideline for reasonable rates in fee-shifting cases.[2] *See Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (describing the matrix as "an official statement of market-supported reasonable attorney fee rates"). According to the United States Attorney explanatory notes: "The matrix is intended to be used in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees.'" See Exhibit L (*USAO Attorney's Fees Matrix*, 2015-2021, note 1, available at https://www.justice.gov/file/1461316/download)

Although the Seventh Circuit has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington, D.C.," it "ha[s] left it to trial judges to exercise their discretion in evaluating its usefulness in any particular case." *Montanez*, 755 F.3d at 554. Courts in this District consider the *Laffey* Matrix as one among a number of factors in determining a reasonable hourly rate. *See Hadnott v. City of Chicago*, 2010 WL 1499473, at *7 (N.D. Ill., Apr. 12, 2010) (collecting cases).

The Matrix (attached as Exhibit L) provides the following rate guidelines for 2021, the most recent year provided:

| Experience | Hourly Rate |
|---|---|
| 31+ years | $665 |
| 6-7 years | $388 |

---

[2] After years of wrangling over the matter of attorney fee hourly rates, the Court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983) ruled that hourly rates for attorneys practicing civil law in the Washington, DC metropolitan area could be categorized by years in practice and adjusted yearly for inflation.

The *Laffey* Matrix is a relevant and helpful resource to use in determining market rate for attorneys in civil rights cases. The rate for Ms. Dymkar would be $665/hour, and for Ms. DasGupta $388/hour. Plaintiffs' proposed rates ($525/hour for Ms. Dymkar and $325/hour for Ms. DasGupta) thus are directly in line with the USAO guidelines, in fact lower than the guidelines, and should be approved as reasonable.

<u>**Conclusion**</u>

Unlike some attorneys -- including the defense attorneys in this case -- who receive remuneration win or lose, plaintiff civil rights attorneys frequently expend substantial time and out-of-pocket capital on cases without any compensation for their efforts. All too often in the past undersigned counsel have devoted substantial sums of money and time in worthwhile cases, to receive nothing at all for those efforts. Where, as here, however, the client *does* prevail, and moreover wins a substantial award, counsel deserves a just compensation for their success. This is particularly the case when the clients' very success is due in large measure to the time-consuming effort on the part of their attorneys on their behalf, necessitated by the recalcitrance on the part of defense counsel to settle the case without the necessity of proceeding to trial.

Given the court awards to plaintiffs' counsel and to other attorneys with the same or similar skill and experience in this community, the affidavits from other civil rights attorneys in the community performing similar work, and the *Laffey* Matrix, plaintiffs contend that Ms. Dymkar should be awarded fees at the market rate of $525/hour, and Ms. DasGupta at the market rate of $325/hour.

The hours plaintiffs' attorneys have expended in this case were reasonable and resulted in success for plaintiff. Plaintiff's lodestar should be approved.

WHEREFORE, plaintiffs, ERIC BOATMAN and CAROL JARVIS, ask this Court for an order granting them attorneys' fees in the amount of $466,832.50, through October 10, 2022, only, against defendants ELIJAH MUHAMMAD, RAMON McCALPINE, OSHAY RIFE, A. MARINEZ, JEFFREY YORK, JR., ROBERT WRIGHT, GREGORY THOMAS, ANDREW WALLACE, and CITY OF HARVEY, ILLINOIS.

Dated: October 12, 2022                    /s/   Irene K. Dymkar
                                                Irene K. Dymkar

Plaintiffs' Attorneys:

Irene K. Dymkar
Shamoyita M. DasGupta
Law Offices of Irene K. Dymkar
53 West Jackson, Suite 733
Chicago, IL 60604
(312) 345-0123

## CERTIFICATE OF SERVICE

I, Irene K. Dymkar, an attorney, certify that on October 12, 2022, a copy of PLAINTIFFS' PETITION FOR ATTORNEYS' FEES was served upon the attorney for defendants named below through the Court's electronic filing system:

Kathleen Kunkle
Ancel Glink, P.C.
140 S. Dearborn, Sixth Floor
Chicago, IL 60603

Dated: October 12, 2022                    /s/   Irene K. Dymkar
                                                Irene K. Dymkar