UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC BOATMAN and CAROL JARVIS, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-4237 |
| v. | ) ) | Hon. Steven C. Seeger |
| ELIJAH MUHAMMAD, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Eric Boatman and Carol Jarvis obtained a judgment in their favor in this section 1983 case after a bench trial on damages. With that judgment in hand, they filed a petition under 42 U.S.C. § 1988 seeking $466,832.50 in attorneys' fees. *See* Mtn. for Fees (Dckt. No. 238). Defendants agree that Plaintiffs are entitled to recover attorneys' fees as prevailing parties. But they contend that a much smaller amount ($151,492.50) would reasonably compensate Plaintiffs' counsel for their work. *See* Resp. to Mtn. for Fees, at 2 (Dckt. No. 244).

Plaintiffs' motion is hereby granted in part and denied in part. The Court awards attorneys' fees totaling $394,643.

## Background

The motion at hand is about a five-year-old case with a long procedural history. The case was filed in 2018, and there are more than 250 docket entries. The motion in question is a motion for attorneys' fees incurred along the ride from there to here.

This Court was not along for any part of the ride. Judge Lee handled the case from start to finish, including the entry of final judgment. The case was reassigned to this Court months later, after Judge Lee joined the Seventh Circuit. This Court came on board after the ride had already stopped (in the lower court, anyway). So, getting to know the backstory is helpful to everyone, including this Court.

The story is long, but the punchline is simple. After years of litigation, Plaintiffs obtained a judgment totaling hundreds of thousands of dollars because Defendants failed to respond to the complaint, and thus defaulted.

The case is about a warrantless search and arrest by the City of Harvey Police Department on June 18, 2016. *See* Cplt. (Dckt. No. 1); 7/6/22 Judgment & Order, at 1 (Dckt.

No. 200). Plaintiffs Carol Jarvis and her son Eric Boatman alleged that officers and detectives of the Harvey Police Department unreasonably searched their home without a valid search warrant. *Id.* Plaintiffs also alleged that the officers used excessive force against Boatman during the search and falsely arrested him, leading to his pre-trial incarceration and malicious prosecution. *Id.*

Two years later, on June 18, 2018, Plaintiffs sued the City of Harvey, and a host of Harvey police officers and detectives. *See* Cplt. (Dckt. No. 1). Plaintiffs' complaint has ten counts. *Id.* at ¶¶ 39–110. Defendants received service of process on June 25, 2018. *See* Dckt. Nos. 7–15. Defendants never answered the complaint or otherwise responded.

So, Plaintiffs moved for an entry of default. *See* Mtn. for Order of Default (Dckt. No. 19). Judge Lee held a hearing on Plaintiffs' motion. *See* 8/29/18 Order (Dckt. No. 23). Defendants did not appear. *See* 7/6/22 Judgment & Order, at 2 (Dckt. No. 200).

Judge Lee granted Plaintiffs' motion and entered default against the Defendants under Rule 55(a). *See* 8/29/18 Order (Dckt. No. 23). Because the Defendants never responded, they are liable for all ten counts of the complaint. *See* 7/6/22 Judgment & Order, at 2 (Dckt. No. 200).

But Defendants soon emerged. On October 12, 2018, Defendants filed a motion to vacate the default order. *See* Mtn. to Vacate (Dckt. No. 26). Judge Lee presided over a hearing on Defendants' motion. But once again, Defendants failed to appear. *See* 10/17/18 Order (Dckt. No. 31).

Despite the non-appearance, Judge Lee denied Defendants' motion on the merits. "[T]he motion does not provide any reason for Defendants' failure to timely answer or otherwise plead." *Id.*; *see also* 7/6/22 Judgment & Order, at 3 (Dckt. No. 200) ("Because Defendants' motion failed to give any reason for their failure to answer the complaint, the Court denied the motion."). Judge Lee then set a deadline for the filing of a motion for default judgment. *See* 10/17/18 Order.

The next day, Defendants filed a second motion to vacate the defaults. *See* 10/18/18 Mtn. (Dckt. No. 34). Judge Lee denied the motion. *See* 10/23/18 Order (Dckt. No. 37); *see also* 7/6/22 Judgment & Order, at 3 (Dckt. No. 200) ("This Court denied that motion as well because Defendants again offered no reason for their failure to respond to summonses."). But Judge Lee gave defendants "one last opportunity" to file a motion to vacate. *See* 10/23/18 Order.

One week later, Defendants filed a third motion to vacate the defaults. *See* 10/30/18 Mtn. (Dckt. No. 38). Plaintiffs filed a response. *See* 1/21/19 Resp. (Dckt. No. 44). Once again, Judge Lee denied the motion. *See* 3/6/19 Order (Dckt. No. 49). The Order explained that Defendants had "failed to include the affidavits required by the Court's prior order." *Id.* at 2.

Defendants then filed an answer (Dckt. No. 50), which Judge Lee struck in light of the entry of default. *See* 4/9/19 Order (Dckt. No. 54).

2

Around the same time, Judge Lee set a new deadline of June 7, 2019 for Plaintiffs to file a motion for default judgment. *See* 4/3/19 Order (Dckt. No. 53); *see also* 6/4/19 Order (Dckt. No. 58).

Plaintiffs also took issue with where things were headed. Plaintiffs filed a motion to reconsider the Court's Order requiring Plaintiffs to prove their damages by affidavits. *See* 6/3/19 Mtn. (Dckt. No. 55). They asked for a jury trial. *Id.* Judge Lee denied that motion, holding that the Court would set the amount of damages by bench trial. *See* 6/4/19 Order (Dckt. No. 58) ("While no published Seventh Circuit decision has addressed this issue, other circuits have explicitly rejected the claim that a plaintiff is entitled to a jury trial on damages after the entry of default.").

At that point, Defendants filed a fourth motion to challenge the defaults, which they styled as a motion to vacate the "default judgment." *See* 8/19/19 Mtn. (Dckt. No. 75). As an aside, that title seems wrong, given that there was no default judgment at that point.

After receiving a response from Plaintiffs (Dckt. No. 78), Judge Lee denied the motion. *See* 12/19/19 Order (Dckt. No. 81). The Court decided that the time to unveil new arguments was over. "Nearly six months after the Court denied Defendants' earlier motion to quash service and vacate default, Defendants filed the motion at issue, which is based on a revised argument as to why service was improper. This new argument is waived, and the motion is thus denied." *Id.*

Defendants then filed a motion for leave to take discovery on the amount of damages. *See* 1/7/20 Mtn. (Dckt. No. 83). Plaintiffs opposed the request. *See* 2/13/20 Resp. (Dckt. No. 89).

Judge Lee granted the motion on March 3, 2020, allowing two months of discovery on the issue of damages. *See* 3/3/20 Order (Dckt. No. 91). At that point, the pandemic hit Chicago in full force, and the courts largely went into hibernation. Judge Lee extended discovery until November 16, 2020, and then to March 15, 2021, and then to May 14, 2021. *See* 9/10/20 Order (Dckt. No. 114); 1/11/21 Order (Dckt. No. 134); 3/22/21 Order (Dckt. No. 135).

Judge Lee presided over a three-day bench trial on the amount of damages, on July 13, July 14, and August 16, 2021. *See* 7/13/21 Minute Order (Dckt. No. 164); 7/14/21 Minute Order (Dckt. No. 165); 8/16/21 Minute Order (Dckt. No. 173). The transcripts are on the docket. *See* 7/13/21 Tr. (Dckt. No. 171); 7/14/21 Tr. (Dckt. No. 172); 8/16/21 Tr. (Dckt. No. 178).

By this Court's count, Plaintiffs called seven witnesses, including Eric Boatman (plaintiff), Cheryl Murriell (next door neighbor), Sacha Boatman (the sister of plaintiff Eric Boatman, and the daughter of plaintiff Carol Jarvis), Carol Jarvis (plaintiff), William Crevier (doctor), Andrea Ward (psychiatrist), and Joseph Mason (psychiatrist). Defendants did not call any witnesses. *See* 8/16/21 Tr., at 395 (Dckt. No. 178, at 42 of 48). Plaintiffs offered 26 exhibits, and Defendants offered three. *Id.*; *see also* Pls.' Ex. List (Dckt. No. 179); Defs.' Ex. List (Dckt. No. 186).

3

The parties then filed a collection of post-trial briefs with proposed findings of fact. *See* 10/22/21 Pls.' Post-Trial Brf. (Dckt. No. 180); 12/3/21 Defs.' Post-Trial Brf. (Dckt. No. 187); 12/3/21 Defs.' Resp. Brf. (Dckt. No. 188); 1/5/22 Pls.' Reply Brf. (Dckt. No. 192); 1/5/22 Pls.' Resp. (Dckt. No. 193). The filings were meaty. To put the filings in perspective, Plaintiffs' post-trial brief weighed in at 26 pages. *See* 10/22/21 Pls.' Post-Trial Brf. Plaintiff's reply had even more girth, tipping the scales at 28 pages. *See* 1/5/22 Pls.' Reply Brf.

Plaintiffs proposed a damages award. For Plaintiff Jarvis (*i.e.*, the mother), Plaintiffs' counsel requested special damages (loss of or damage to property) totaling $23,670 to $24,790, and general damages (physical and emotional pain and suffering, and loss of freedom) totaling $300,000 to $600,000. *See* 10/22/21 Pls.' Post-Trial Brf., at 25–26 (Dckt. No. 180). For Plaintiff Boatman (*i.e.*, the son), Plaintiffs' counsel requested special damages (criminal legal fees, court fee, and lost Social Security payments) totaling $9,589, and general damages (physical and emotional pain and suffering, and loss of freedom) totaling $425,000 to $775,000. *Id.*

In the end, Judge Lee awarded compensatory damages totaling $34,070 to Jarvis and $337,089 to Boatman. *See* 7/6/22 Order (Dckt. No. 199).

Putting those numbers in perspective, Plaintiffs recovered a fraction of what they requested – a small fraction by one Plaintiff, and a big fraction by the other Plaintiff. Jarvis recovered $34,070, which is roughly 10% of the low end of the range that counsel requested ($323,670). Boatman recovered $337,089, which is a little more than 75% of the low end of the range that counsel requested ($434,589).

Putting their requests together, Jarvis and Boatman requested at least $758,259 ($323,670 + $434,589), at the low end of the range. Judge Lee awarded $371,159 ($34,070 + $337,089). That's a little less than 50% (it is 48.9%, to be exact) of the requested amount of damages, at the low end of the range. So, together, Plaintiffs recovered about half of what counsel requested at trial (again, at the low end of the range).

The Court entered judgment on July 6, 2022. *See* 7/6/22 Judgment & Order, at 1 (Dckt. No. 200). That Judgment and Order may sound like a one-page document, but it was a 26-page opinion summarizing the Court's findings from the bench trial.

A few weeks later, Judge Lee entered an amended final judgment that specifically named all Defendants. Judgment was entered in favor of Eric Boatman and Carol Jarvis and against the City of Harvey, Elijah Muhammad, Ramon McCalpine, Oshay Rife, A. Marinez, Jeffrey York, Jr., Robert Wright, Gregory Thomas, and Andrew Wallace. *See* 7/26/22 Am. Judgment & Order, at 1 (Dckt. No. 205).

After the entry of final judgment, Judge Lee joined the Seventh Circuit, and the case was reassigned to this Court. *See* 9/14/22 Order (Dckt. No. 233).

Plaintiffs then filed a petition under 42 U.S.C. § 1988, seeking $466,832.50 in attorneys' fees. *See* Mtn. for Fees (Dckt. No. 238). Before filing the petition, Plaintiffs sent defense

counsel a copy of their proposed fees, and the documentary back-up, as required by Local Rule 54.3. Specifically, Plaintiffs' counsel provided their billing records to defense counsel on August 2, 2022, a few months before filing the petition.

Defendants object to that amount, and seek to trim the fee award to $151,492.50. *See* Resp. to Mtn. for Fees (Dckt. No. 244). Basically, they seek reductions for (1) appellate work; (2) non-legal work; (3) vague work; (4) excessive discussions; (5) some strategy discussions; and (6) duplicative work.

Then, Defendants argue that the entire amount should be cut in half, because one of the two Plaintiffs (Jarvis) recovered only $34,070.

After reducing the number of hours (by category), and then cutting the entire amount in half, Defendants contend that Plaintiffs should receive only $151,492.50.

A few days ago, this Court issued an Order that posed a few questions. *See* 7/10/23 Order (Dckt. No. 252). As directed, Plaintiffs' counsel filed a response. *See* 7/12/23 Pls.' Statement, at 4 (Dckt. No. 253). And as directed, Plaintiffs' counsel provided native files of the billing records, in Excel.

Those spreadsheets helped the Court examine the numbers. This Court took a close look, and crunched the numbers. The breakdown of fees by year is as follows. Dymkar billed 4 hours in 2016, 1.2 hours in 2017, 27.3 hours in 2018, 49.6 hours in 2019, 71.9 hours in 2020, 259.8 hours in 2021, and 113.2 hours in 2022. That's a total of 527 hours. DasGupta billed 2 hours in 2016, 0.7 hours in 2017, 39 hours in 2018, 50.5 hours in 2019, 120.4 hours in 2020, 302.7 hours in 2021, and 69.8 hours in 2022. That's a total of 585.1 hours.

## Analysis

The American Rule is that each side in a lawsuit must pay its own attorneys' fees, unless a statute or a contract says otherwise. Section 1988 is one such statute. Under section 1988(b), "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See* 42 U.S.C. § 1988(b).

The statutory text vests district courts with triple-barreled discretion when it comes to awarding attorneys' fees. A district court "may" award "reasonable" attorneys' fees "in its discretion." *Id.* That's a lot of "may," and not a lot of "must." Each word buttresses the other, cementing the point that it is up to the district court to make a judgment call about a request for fees.

As the text reveals, a district court has broad discretion in determining reasonable attorneys' fees under section 1988. *See Montanez v. Simon*, 755 F.3d 547, 552–53 (7th Cir. 2010). But broad discretion "doesn't mean that the district court's discretion is boundless." *Id.* at 553. The court must apply the correct legal standard and justify its conclusions. *Id.*

Attorneys' fees under section 1988 are available only to "the prevailing party." *See* 42 U.S.C. § 1988(b). A plaintiff is a prevailing party if he "obtained an enforceable judgment against the defendant from whom fees are sought, and that judgment directly benefitted him, thereby altering the legal relationship of the parties." *Robinson v. Perales*, 894 F.3d 818, 834 (7th Cir. 2018). "A plaintiff who wins even nominal damages is a prevailing party under section 1988." *Id.*

Here, Plaintiffs obtained a judgment in their favor, so they are prevailing parties. As a result, they are eligible for attorneys' fees. The question is simply whether they should get them, and if so, how much.

On this record, the Court agrees that Plaintiffs should receive an award of attorneys' fees. They prevailed in the case after four years of litigation. There were costs in getting there, including legal fees. And there was no guarantee that the case would end favorably for them.

To determine the prevailing party's fees, a district court begins by calculating the lodestar amount, meaning "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *See Montanez*, 755 F.3d at 553; *Nichols v. Illinois Dep't of Transportation*, 4 F.4th 437, 441 (7th Cir. 2021) ("A court starts by determining the 'lodestar,' which is the attorney's reasonable hourly rate multiplied by the hours the attorney reasonably expended on the litigation."). Basically, "[t]he award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017).

"The lodestar approach forms the 'centerpiece' of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement." *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). In fact, "there is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.*

!
"Once the court calculates the lodestar, it then may determine whether an adjustment is warranted under the case-specific circumstances." *Nichols*, 4 F.4th at 441. The lodestar amount does not always produce a reasonable fee. "Although the lodestar yields a presumptively reasonable fee, the court may nevertheless adjust the fee based on factors not included in the computation." *World Outreach Conf. Ctr. v. City of Chicago*, 896 F.3d 779, 783 (7th Cir. 2018) (quotation marks omitted).

"A crucial factor in determining whether to adjust an award upward or downward is the result obtained by the prevailing party, particularly when 'a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). When "a plaintiff has obtained excellent results, [the] attorney should recover a fully compensatory fee," but, if "a plaintiff has achieved only partial or limited success, [the lodestar] may be an excessive amount." *Id.* (alterations in original) (quoting *Hensley*, 461 U.S. at 435–36). The degree of success obtained is "the most critical factor" in determining the reasonableness of the lodestar amount. *See Robinson*, 894 F.3d at 835.

6

"If a plaintiff requests fees for the fee award litigation, the court will also determine that after calculating the lodestar." *Nichols*, 4 F.4th at 441; *see also Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986).

Here, Plaintiffs seek $466,832.50 in attorneys' fees under 42 U.S.C. § 1988. *See* Mtn. for Fees (Dckt. No. 238). Specifically, Plaintiffs requested fees for attorneys Irene K. Dymkar and Shamoyita M. DasGupta. *Id.* at 2. Plaintiffs sought compensation for 527 hours of Dymkar's time at $525 per hour ($276,675) and 585.1 hours of DasGupta's time at $325 per hour ($190,157.50). *Id.*

Defendants oppose Plaintiffs' fee petition in part. *See* Resp. to Mtn. for Fees (Dckt. No. 244). Defendants concede that "Plaintiffs are entitled to recovery of attorneys' fees pursuant to 42 U.S.C. § 1988." *Id.* at 1.

But Defendants believe that Plaintiffs are entitled to a grand total of only $151,492.50 in attorneys' fees. *Id.* at 2. Specifically, Defendants believe that Plaintiffs should recover $92,163.75 for the work of attorney Dymkar, and $59,328.75 for the work of attorney DasGupta. *Id.* at 15.

Defendants do not dispute Dymkar's and DasGupta's hourly rates. *Id.* In the Joint Statement attached to Plaintiffs' motion for attorneys' fees, Defendants suggested that Dymkar should receive an hourly rate of $495, not $525. *See* Joint Statement under Local Rule 54.3(e), at ¶ 2 (Dckt. No. 238-1).

But Defendants later dropped the objection. In their response brief, Defendants do not oppose the hourly rates. In fact, Defendants use the hourly rates proposed by Plaintiffs (*i.e.*, $525 for Dymkar, and $325 for DasGupta) in their own calculation. *Id.*

Defendants do dispute the number of hours worked by Plaintiffs' attorneys. *Id.* Defendants objected to 215.9 hours of the 527 hours for Dymkar, and objected to 260 hours of the 585.1 hours for DasGupta. *Id.* at 14–15.

The objections fall into a few buckets. Five of the six objections are about the number of hours spent doing certain tasks. So they come into play when calculating the lodestar amount. The other objection (*i.e.*, the second one) is about whether the lodestar amount is appropriate given the total amount of the recovery by Plaintiff Jarvis. So it involves a reduction *from* the lodestar amount.

The five objections are as follows. First, Defendants objected to fees spent litigating an appeal to the Seventh Circuit because Plaintiffs had not yet prevailed on appeal. *Id.* at 5–6. Second, Defendants objected to time billed for non-legal work performed by Plaintiffs' attorneys. *Id.* at 9–10. Third, Defendants objected to time entries that they deemed vague. *Id.* at 10–12. Fourth, Defendants objected to certain time entries for discussions between attorneys Dymkar and DasGupta that they deemed excessive. *Id.* at 12–13. Fifth, Defendants objected to time entries reflecting duplicative work. *Id.* at 13–14.

Defendants offered a table that summarized the proposed reductions, by category. *Id.* at 14–15. For example, Defendants believe that Dymkar and DasGupta had "excessive discussions," so they propose a reduction of 76.5 hours for Dymkar and 85.2 hours for DasGupta. *Id.* at 14. Defendants also highlighted the disputed billing entries, using different colors for different objections. *See* Dymkar Billing Records (highlighted) (Dckt. No. 244-1); DasGupta Billing Records (highlighted) (Dckt. No. 244-2).

After reducing the hours (again, by 215.9 hours for Dymkar, and 260 hours for DasGupta), the revised total is $184,327.50 for Dymkar, and $118,657.50 for DasGupta. *Id.* at 14–15. That's a total of $302,985.

Then, Defendants seek another 50% haircut because they believe that Plaintiff Jarvis should recover nothing. *Id.* In their view, only one of the two Plaintiffs should get attorneys' fees, so the award of attorneys' fees must be cut in half. *Id.* That leads to a total of $92,163.75 for Dymkar (*i.e.*, $184,327.50 ÷ 2), and $59,328.75 for DasGupta (*i.e.*, $118,657.50 ÷ 2). That's a total of $151,492.50.

The Court will take up the objections, one by one. But before diving in, the Court offers a few overarching observations.

For starters, it is more than a little challenging to assess the reasonableness of a demand for attorneys' fees, years after the fact, on a case handled by another judge. The vast majority of the time, the district court judge has lived and breathed a particular case for years. A district court judge develops a highly detailed understanding and firm grasp of what exactly happened, and how the entire case unfolded.

Living through something creates a different feeling, and a deeper level of understanding, than reading about what happened to other people. That first-hand familiarity is part of the reason why district courts, not courts of appeals, are best-equipped to make decisions about attorneys' fees. *See Leffler v. Meer*, 60 F.3d 369, 372 (7th Cir. 1995) ("This deferential standard of review is necessary to protect the district court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'") (citation omitted). Reading something from afar – on a cold record, after the fact, with no first-hand knowledge – is no substitute for experiencing something akin to live fire in the trenches.

That reality is less present here than in a normal case. Judge Lee presided over this case from start to finish, and the case was reassigned to this Court after the entry of final judgment. So, this Court's task is to assess the reasonableness of attorneys' fees expended from 2018–2022, in a case that this Court knew nothing about until the case was reassigned after final judgment.

With that caveat, the Court calls attention to the fact that the requested award of attorneys' fees here ($466,832.50) is more than the amount recovered for the clients ($34,070 for Jarvis and $337,089 for Boatman, for a total of $371,159). It is not ideal if attorneys recover more from a case than their clients. But sometimes, it happens.

If Plaintiffs' counsel had taken the case based on a contingency fee, they would have recovered a fraction of their clients' recovery, not a multiple of it. Oftentimes, a contingency fee is a third of the recovery by the client.

Here, one third of $371,159 is $123,719. Instead of getting a third of the clients' award, Plaintiffs' counsel want something closer to an equal amount *plus* a third. To put the requested amount ($466,832.50) in perspective, the actual recovery by the clients ($371,159) multiplied by 1.33 is $493,641. Basically, Plaintiffs would recover $X, and the lawyers would recover $X plus one third.

Then again, in some types of cases, the potential recovery may not be that large. And it can take a lot of front-end costs in attorneys' fees to recover that not-so-large amount for the clients. Without allowing an appropriate amount of attorneys' fees in those cases, potentially meritorious cases might not be brought at all.

Litigating a case isn't like building cars or baking cupcakes, where there can be an economy of scale. It is more like baking and icing a wedding cake for a particular couple, or tailoring a suit for a particular person. A lot of things about each case – the facts, the witnesses, the procedural issues, the rulings, and so on – are *sui generis*.

Each case is different, and most cases in federal court require significant time and energy simply to get to the finish line. A certain amount of front-end costs is unavoidable.

You can't get something for nothing – and sometimes, you can't get something without something and a little more. Sometimes the cost of pushing the wagon to the finish line exceeds the value of what's in the wagon.

Then again, from another perspective, the recovery by the clients looks significant. The amount that Plaintiffs' counsel achieved for their clients ($371,159) far exceeded the *ex ante* settlement value from the perspective of the Defendants. According to the filings, the highest settlement offer that Defendants ever put on the table was $40,000. *See* Mtn., at 5 (Dckt. No. 238). In the end, Plaintiffs recovered almost 10 times that amount.

One final observation, before turning to the arguments. It can be all-too-easy to say that someone took too long when you're not the one doing it. (Try writing an opinion.)

I.      **The Lodestar**

The first task is calculating the lodestar amount. Again, that process involves simple math: a reasonable hourly rate times a reasonable number of hours. A reasonable number multiplied by a reasonable number is a reasonable starting point.

The first part of the equation is the hourly rate. The punchline is that the Court approves an hourly rate of $495 (not $525) for Dymkar, and $325 for DasGupta.

9

On August 2, 2022, Plaintiffs' counsel sent a draft of the Joint Statement to defense counsel. They proposed an hourly rate of $495 for Dymkar, and $325 for DasGupta. *See* 11/9/22 Defs.' Resp., at 2–3 (Dckt. No. 244) ("Per the billing records provided to Defendants on August 2, 2022, Plaintiffs claimed a total of $409,993.50 . . . as follows: 468.8 hours for attorney Irene Dymkar . . . at $495 per hour . . . and 547.5 hours for attorney Shamoyita DasGupta . . . at $325 per hour."); 12/7/22 Pls.' Reply, at 7 (Dckt. No. 246); 7/12/23 Pls.' Statement, at 4 (Dckt. No. 253) ("Plaintiffs submitted billing records to defendants on August 2, 2022, that were calculated at a rate used previously, that is, $495/hour for attorney Dymkar.").

Defendants have gone back and forth on the issue of Dymkar's rate. In the Joint Statement, Defendants proposed a rate of $495, but Dymkar proposed a rate of $525. *See* Joint Statement under Local Rule 54.3(e), at ¶¶ 1, 2 (Dckt. No. 238-1).

But in their response brief, Defendants seemed to walk back their objection. Plaintiffs proposed an hourly rate of $525 per hour for Dymkar, and $325 per hour for DasGupta. *See* Mtn. for Fees (Dckt. No. 238). Defendants did not object to those hourly rates in their brief. In fact, they used those rates as part of their calculation. *See* Resp. to Mtn. for Fees, at 5–6 (Dckt. No. 244).

This Court sees little reason to give Plaintiffs' counsel an hourly rate of $525 instead of $495. Judge Lee entered final judgment in July 2022. A few weeks later, on August 2, 2022, Dymkar proposed an hourly rate of $495. She thought that her time was worth $495 per hour. This Court will hold her to it.

A rate of $495/hour is nothing to sneeze at. That's an increase over the last rate that received judicial approval for Dymkar from a judge in this district ($475). In effect, Dymkar is trying to get an increase over an increase.

Earlier this week, this Court issued an Order to pin down the facts about what rates Plaintiffs' counsel had proposed, and when. *See* 7/10/23 Order (Dckt. No. 252). In response, Plaintiffs' counsel confirmed that she did, in fact, propose an hourly rate of $495 (not $525) in her draft of the Joint Statement on August 2, 2022. *See* 7/12/23 Pls.' Statement, at 4 (Dckt. No. 253).

But Plaintiffs' counsel tried to walk it back, claiming it was a mistake. "[A]s noted in plaintiff's reply brief (a fact that defendants failed to mention in their response brief), plaintiffs' counsel informed defense counsel *soon thereafter* that the rate was an error and should have been $525/hour, based on current market rates, and that the rate would be corrected in the final version of the joint statement and in the fee petition." *Id.* (emphasis in original).

That's not exactly right. The brief makes it seem like counsel simply made a typo, and soon corrected it. But that's not what happened. The brief pointed to her email to defense counsel dated September 2, 2022. *Id.* But in that email, Plaintiffs' counsel did not correct a mistake. Counsel simply reported that her proposal was too low, and she intended to increase it. *See* 9/2/22 Email (Dckt. No. 246-1) ("You stated that you do not anticipate objecting to our increased hourly rates, which we indicated would be higher because of what we learned from our

10

research into the current market rate in Chicago for civil rights attorneys completed after we submitted timesheets to you.").

That's not really an "error." That's a proposal that someone later regrets. She didn't make a mistake. She changed her mind.

The simple reality is that Dymkar thought that an hourly rate of $495 was reasonable on August 2, 2022, after obtaining a judgment in July 2022. This Court will hold her to it. This Court will apply an hourly rate of $495 for Dymkar, and $325 for DasGupta.

The rate for Dymkar ($495) is higher than the last approved rate that she received in this district ($475). *See* Mtn. for Fees, at 12 (Dckt. No. 238); 7/12/23 Pls.' Statement, at 2–3 (Dckt. No. 253). Two judges approved a rate of $475 for her in 2019. Some increase is appropriate. Since 2019, four years have passed. She has gained more experience, and prices haven't exactly gone down.

Based on the submissions, an hourly rate of $495 is not out of line with the rates charged by other attorneys in this area in this district. *See* Mtn. for Fees (Dckt. No. 238). Plaintiffs' counsel attached a collection of declarations from other attorneys in the same practice area in this district. The declarations revealed their billing rates. A rate of $495 is in the same ballpark.

In sum, the calculations by Plaintiffs' counsel used rates of $525 per hour for Dymkar, and $325 for DasGupta. This Court will use $495 for Dymkar, and $325 for DasGupta.

The next question is the reasonableness of the number of hours. Together, Dymkar and DasGupta racked up over 1,100 hours on the case, including 527 hours for Dymkar and 585.1 hours for DasGupta.

That's a lot of time, especially in a case involving a default judgment. Defendants defaulted, so there was no motion to dismiss or motion for summary judgment. There were no experts. And fact discovery was limited, too. The only issue was damages.

Even so, the case lasted four years. The complaint was filed in June 2018, and final judgment was entered in July 2022. Every case has a burn rate, so the longer that a case hangs around, the greater the fees.

After digging into the docket, it is hard to say that the hours (in the aggregate) are unreasonable. Defendants filed multiple rounds of motions to set aside the default. Overall, the parties filed over 40 motions, and Judge Lee presided over more than 20 hearings. All of them took time, and cost money.

Defendants aren't in the best position to quibble with many of the fees. After all, Defendants caused a lot of the fees. Defendants filed repeated motions to vacate the default, and required counsel to respond and attend court hearings. Defendants also requested and received leave to take discovery on the issue of damages, and did so over Plaintiffs' objection. Again, all of that took time, and cost money.

After widening the lens to look at the case as a whole, the Court zoomed in and took a close look at the line items in the billing records. On close inspection, nothing jumps out in a bad way. The records reveal that Dymkar and DasGupta worked on the case in a steady, persistent basis. The entries are detailed, without a lot of fat numbers with little description. The entries described the type of work that one would expect in a case like this one.

So, before diving into the objections, the amount of the hours seems reasonable, based on a first look. Defendants, however, had five objections to the amount of hours. Overall, the objections have a ticky-tacky feel.

***The Appeal.*** First, Defendants object to the fact that the proposed fee award includes fees from the appeal. *See* Resp. to Mtn. for Fees, at 5–6 (Dckt. No. 244). And Defendants point out that Plaintiffs filed a motion to strike the notice of appeal. *Id.* But since then, the Seventh Circuit denied Plaintiffs' motion to dismiss the appeal for lack of jurisdiction. The Seventh Circuit also denied a motion to stay the judgment pending appeal. So the appeal is in the works.

It is true that a party must be a "prevailing party" to receive attorneys' fees. And it is true that Plaintiffs have not yet prevailed on appeal, which remains pending.

The Court has a pragmatic solution. For now, the Court will provisionally award attorneys' fees that include the beginning of the appeal, as reflected in the petition for fees. (This Court is not commenting on the merits of the appeal, one way or the other. The Court frankly has no idea.)

If Plaintiffs prevail on appeal, then the work is already done on the request for attorneys' fees related to the appeal. If Plaintiffs do not prevail on appeal, then this Court can revisit that portion of the award (depending on what the Seventh Circuit does), as necessary.[1]

***Non-Legal Work.*** Second, Defendants objected to time billed for non-legal work performed by Plaintiffs' attorneys. *See* Resp. to Mtn. for Fees, at 9–10 (Dckt. No. 244). Defendants believe that a significant amount of the work involved "paralegal or assistant level work," especially by attorney DasGupta. *Id.* at 9. They object to six hours by Dymkar, and 42.5 hours by DasGupta.

The Court went through the disputed entries (which defense counsel highlighted with a pink highlighter). *See* Dckt. Nos. 244-1, 244-2. Suffice it to say that the Court is satisfied that the disputed entries were reasonably necessary.

---

[1] Another option would be to back-out all of the fees related to the appeal, and set them aside for now. But if this Court took that route, it would substantially complicate all of this Court's other calculations as reflected elsewhere in this opinion. As shown below, this Court used the aggregate amount when evaluating the proposed discount, and did that as a measuring stick. It provided a point of reference. Backing out the post-judgment fees would require the Court to redo all of those calculations. That's no small thing. This Order is heavy enough already. If the Court needs to change something later, because of a development on the appeal, this Court can always do so. In all likelihood, this Court will need to revisit this issue anyway. If Plaintiffs win on appeal, they will ask for more fees. If they lose on appeal, this Court will have to revisit the award.

Not all of the work was the type of heavy lifting that would require Clarence Darrow. But the simple reality is that, in a small firm, lawyers can't delegate everything. The work was sufficiently legal in nature, and reasonably tied to the legitimate needs of the case.

***Vague Entries.*** Third, Defendants objected to time entries that they deemed vague or unreasonable. *See* Resp. to Mtn. for Fees, at 10–12 (Dckt. No. 244). They object to 93.2 hours for Dymkar, and 95.1 hours for DasGupta.

For example, Dymkar had a number of entries for "legal research." Defendants want to know what the legal research was about. As another example, Defendants point out that DasGupta spent 39.5 hours drafting the proposed findings of fact after trial.

It is important that the time entries include a sufficient level of detail. It helps to ensure that the attorney was doing real work, and was spending an appropriate amount of time doing it. The reader should have a sense of what the attorney was doing with her time.

Once again, after a close look, the Court concludes that the disputed time entries pass muster. The descriptions offer enough details to convey what the attorneys were doing. The attorneys did the types of things that you would expect them to do.

***Discussions Between Counsel.*** Fourth, Defendants objected to certain time entries for discussions between attorneys Dymkar and DasGupta that they deemed excessive. *See* Resp. to Mtn. for Fees, at 12–13 (Dckt. No. 244).

After reviewing the entries, the Court concludes that the attorneys did not discuss the case excessively. Most of the time, the attorneys discussed the case for a fraction of an hour. Oftentimes, the conversations lasted for only 0.1 or 0.2 hours. There wasn't a lot of block billing – say, 6.0 hours for a conversation on a specific date.

Instead, the time entries show regular, short communications about the case with a fellow team member. That's how you win a case.

***Duplicative Work.*** Fifth, Defendants objected to time entries reflecting duplicative work. *See* Resp. to Mtn. for Fees, at 13–14 (Dckt. No. 244). They highlighted entries where, in their view, only one attorney could have done the work.

Again, Plaintiffs' counsel did not go overboard. The disputed entries include meetings with the clients. They also include some court hearings, and depositions. It is not unusual to have more than one attorney in a client meeting, or at a court hearing, or at a deposition. Counsel shouldn't go overboard. But here, counsel stayed on the ship.

To sum it up, the Court took a close look at the docket, and the time sheets. An hourly rate of $495 for Dymkar and $325 for DasGupta is reasonable, and so are the number of hours. The total number of hours (over 1,100) is not small, but the case lasted four years. Even small drips add up after four years.

13

Doing the math, the Court tallies up the lodestar as follows. Dymkar spent 527 hours on the case. At $495 per hour, that's a total of $260,865. DasGupta spent 585.1 hours on the case. At $325, that's a total of $190,157. Putting them together, $260,865 plus $190,157 equals $451,022. That's the lodestar.

Technically speaking, the lodestar is a little less. The lodestar is about the amount of time spent litigating the merits of the case. It does not include attorneys' fees spent litigating a request for attorneys' fees. Here, it looks like the request for fees includes time spent preparing the fee petition, including around 59.6 hours for Dymkar and 39.2 for DasGupta. (Plaintiffs' counsel billed these hours after Judge Lee entered amended final judgment. So some of the hours are for the fee petition, and some of the hours are for the appeal.)

Regardless, Defendants do not contest the fees that Plaintiffs' counsel spent preparing the fee petition. The Court finds that they are reasonable, too. The Court combines these fees with the fees litigating the merits when assessing Defendants' objection based on the outcome in Jarvis's case.

## II. The Discount from the Lodestar

The bigger issue is whether this Court should reduce the amount of attorneys' fees based on the outcome of the case for Plaintiff Jarvis. At trial, she recovered something, but she did not hit the jackpot. The Court agrees that some discount is appropriate, given the small size of the recovery. But figuring out the right haircut is a challenge.

Again, consider the damages that Plaintiffs' counsel requested for Jarvis in the post-trial brief. Counsel requested special damages (loss of or damage to property) totaling $23,670 to $24,790, and general damages (physical and emotional pain and suffering, and loss of freedom) totaling $300,000 to $600,000. *See* 10/22/21 Pls.' Post-Trial Brf., at 26–27 (Dckt. No. 180). Putting them together, that's a range of $323,670 to $624,790 (again, for Jarvis alone).

In the end, Judge Lee awarded Jarvis only $34,070. Judge Lee prepared a helpful chart that summarized how, exactly, he arrived at that number. *See* Judgment and Order (Dckt. No. 200). Judge Lee awarded $9,070 in special damages (for damage to property), and $25,000 in general damages (for warrantless entry, unreasonable execution, and failure to knock). *See* Damages Chart (Dckt. No. 200-1).

Jarvis prevailed, but it wasn't a resounding victory. The amount of the damages ($34,070) is roughly one-tenth of the low end of the range ($323,670), and it is an even smaller fraction (closer to one-twentieth) of the high end of the range ($624,790). Put another way, Jarvis recovered somewhere between five and ten percent of the requested damages, give or take (depending on which denominator you pick).

The recovery was enough to qualify Jarvis as a prevailing party. But it wasn't a win for the ages, either. The reality is that Plaintiffs' counsel spent over 1,100 hours working for two clients, and one client recovered only 5–10% of what she wanted.

14

The recovery by Jarvis also looks small when compared to the requested attorneys' fees. Jarvis recovered $34,070. Plaintiffs' counsel now seek $466,832.50 (again, for two plaintiffs) in attorneys' fees.

Consider the requested amount from a different angle. Imagine if the amount of time were split in half, and counsel spent 550 hours working for Jarvis. (Disclaimer: that's a false assumption. Surely the marginal amount of additional time working only for Jarvis, above and beyond the amount of time working for Boatman, was less than 550 hours. Representing a second client would not double the amount of time. Still, consider the illustration for what it is worth.) A recovery of $34,070 is a recovery of less than $62 per hour (*i.e.*, 550 hours x $62/hour ~ $34,070)

"[T]he most critical factor in determining the reasonableness of the award is the degree of success obtained." *See Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Here, Jarvis lost more than she won. The attorneys' fee should reflect that reality.

The Court agrees that some reduction is appropriate. The question is how much. And here, the question gets tricky. "Precision is impossible in such calculations, and the district court is entitled to considerable discretion in arriving at an award that it deems reasonable." *See Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010).

"'No algorithm is available' for adjusting a lodestar to reflect partial or limited success." *Montanez*, 755 F.3d at 557 (quoting *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014)). And on this front, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

But a comparison of requested damages to awarded damages is a good starting point. "A district court assessing a plaintiff's degree of success may consider how the size of the final recovery stacks up against the amount plaintiff originally sought." *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 758 (7th Cir. 2022).

On that front, "a fee request that dwarfs the damages award might raise a red flag." *Montanez*, 755 F.3d at 557 (quoting *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009)). For example, the Seventh Circuit affirmed a district court's decision to slash the lodestar by 50% when "each individual plaintiff receiv[ed] between 17% and 73% of that plaintiff's claim." *Koch*, 51 F.4th at 758.

Some amount of discount seems appropriate, given the limited recovery by Jarvis. But how much? It depends on how you look at it.

The issue is complicated because the case involves not one, but two Plaintiffs, both of whom are prevailing parties. One Plaintiff (Boatman) obtained a substantial recovery, but the other (Jarvis) did not. Counsel should recover the full attorneys' fees for Boatman, but not for Jarvis.

15

Figuring out how much time Plaintiffs' counsel spent representing Jarvis, above and beyond the time spent representing Boatman, is no easy task. After all, counsel represented two clients at the same time.

Oftentimes, when doing work, counsel performed services for both clients at once. A good example is attending a court hearing, or reviewing a brief, or performing legal research, and so on. One task helps two clients. Counsel didn't exactly kill two birds with one stone. Counsel fed two birds with one bag of birdseed.

Looking at the billing records, counsel did not separately itemize tasks for Boatman and tasks for Jarvis. They were blended together. That's not particularly surprising, given that they were in the same boat. So, looking at the billing records doesn't provide much help when trying to figure out how much time counsel spent working for Jarvis (only).

One way to look at the issue might be to figure out how much counsel spent representing the client who obtained substantial success (Boatman). And then, one might figure out the marginal costs incurred representing the client who recovered a smaller amount (Jarvis).

That is, if Boatman was the only plaintiff, what would the attorneys' fees have been? Everything? Or something less? How much less? Surely representing two clients generated more fees than representing one client. The evidence was not the same, and so on. So, the key might be to figure out the marginal costs incurred representing Jarvis, above and beyond the costs incurred representing Boatman.

But again, that task is a heavy lift. It is difficult to say based on the billing records how much additional work it took to represent Jarvis, in addition to representing Boatman. The marginal costs are uncertain. "When the judge cannot easily separate the successful and unsuccessful work, there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Montanez*, 755 F.3d at 557 (quotation marks omitted).

Consider the problem from another angle. If counsel represented Jarvis, and only Jarvis, what would an appropriate award of attorneys' fees be? That is, imagine if counsel had represented Jarvis for four years, and achieved an outcome of $34,070. What would an appropriate amount of attorneys' fees be for that recovery?

Defendants argue that this Court should divide the fees in half, splitting them between the two clients. And they believe that Jarvis should recover nothing.

A 50% haircut seems excessive. After all, Jarvis *is* a prevailing party. She won damages. Cutting the fees in half is the same thing as cutting her off.

Based on the record, the Court concludes that Plaintiffs' counsel would have incurred more than half of the lodestar ($451,022) in fees if they had represented only Boatman. Plaintiffs' counsel should not be penalized for representing two clients instead of one. That is,

16

Plaintiffs' counsel should not recover *less* from representing Boatman plus Jarvis than they would have recovered from representing only Boatman.

After reviewing the billing records and everything else in the record, the Court concludes as follows. It is appropriate to give Boatman full attorneys' fees for his recovery. And it is appropriate to apply a discount to the attorneys' fees for Jarvis. That discount should apply to the marginal costs – that is, to the additional time spent representing Jarvis.

There are no bright lines or easy answers. The Court recognizes that this exercise is neither an art, nor a science. If the goal is "rough justice," you came to the right place. *See Fox*, 563 U.S. at 838.

Based on the Court's review of the billing records, the Court concludes that it is appropriate to allocate 75% of the attorneys' fees to Boatman. That is, Boatman should receive full attorneys' fees, and the Court estimates that 75% of the time was spent representing Boatman. Put another way, if Jarvis were not in the case, Plaintiffs' counsel would have spent 75% of the requested time on the case.

On the flipside, counsel spent 25% of the time on Jarvis. Jarvis is a prevailing party, but it wasn't a big win. The award of damages was a small fraction of the request. The Court concludes that a 50% haircut to that portion of the fees (meaning the 25% share) is appropriate.

In other words, the Court will award Plaintiffs' counsel 75% of the lodestar amount ($451,022) for Boatman. That's $338,266. Putting that number in perspective, the amount of attorneys' fees for representing Boatman ($338,266) is almost the same as the amount of damages awarded to Boatman ($337,089).

The remaining 25% of the lodestar amount is $112,755 (*i.e.,* that's 25% of $451,022). The Court will award half of that amount for Jarvis. That's $56,377.

In effect, when it's all said and done, the Court is awarding approximately 87.5% of the lodestar amount for representing the two Plaintiffs.

In sum, the Court finds that Boatman and Jarvis are prevailing parties. The Court awards attorneys' fees totaling $338,266 for Boatman. The Court awards attorneys' fees totaling $56,377 for Jarvis. Putting them together, the Court awards a grand total of $394,643 in attorneys' fees.

Date: July 13, 2023

Steven C. Seeger
United States District Judge